The appellate court of Illinois has reconvened. You may be seated. This is our next case of the morning. Tolman v. Department of State Police et al. For the appellant, Mr. Ohlendorf. And for the appellee, Mr. Rossette. You may proceed. Thank you. Thank you, Justice Necht. And may it please the court. Your Honors, the Civil Rights Act of 2003 provides that in any case where a case is brought to enforce a right arising under the Constitution of Illinois, a fee award is available. Your Honors, my clients, the plaintiffs below, brought such a case. They brought a case to vindicate their rights to due process under the Constitution of Illinois, which they alleged were being violated by the defendant, the Concealed Carry Licensing Board, in practice of denying applications for a license to carry a concealed firearm based on objections that were never shared with the applicant. Essentially based on secret objections. Your Honor, we submit a plain violation of due process. Your Honors, my clients sought principally two types of relief. They sought to compel the board to stand up new procedures that would accord with due process. And they sought to have the benefit of those procedures, to have their individual applications remanded for rehearing under these new procedures. And Your Honors, the plaintiffs below wholly prevailed under both types of relief. There are new procedures that are in play now that we submit to accord with due process. And there have been orders entered by the court below remanding our applications for rehearing. Nonetheless, the court below denied our petition for attorney's fees under the Civil Rights Act. Reasoning essentially two-fold. Reasoning first that our claim for injunctive relief in Count 1 of our complaint was frivolous and therefore could not support an award of fees under the Civil Rights Act. And reasoning that our request for administrative review in Count 2 of the complaint was in fact not an action brought to enforce a right arising under the Constitution. Your Honors, we submit to you today that both of those conclusions are, with respect, are plainly wrong. Beginning this morning with Count 1 with our claim for declaratory and injunctive relief in the underlying action. It's certainly true that principles of administrative law and administrative review in the ordinary course require or prevent a challenger from mounting a collateral attack to administrative action outside the confines of the administrative review law. Based really on principles of exhaustion that administrative review is generally available and that under the administrative review law that includes judicial review under the procedural strictures of that law. And that the ordinary rule, of course, we don't contest, is that if you don't follow those roots, you can't mount a collateral attack. However, there are several well-defined, well-established exceptions to that ordinary rule, which the state does not contest. We think, Your Honor, that we fall under no fewer than three of those well-established exceptions. Any one, of course, would be sufficient to allow our underlying claim to go forward. But we think we fall under three of them, or would have fallen under three of them had the case advanced to the merits. First of all, Your Honors, we think that our claim for our request for injunctive and declaratory relief falls under the well-established exception for attacks on agency action that raise no issues of fact, that turn purely on questions of law. And we think that this exception, the nature of this exception, is well delineated in the Supreme Court's decision, the Illinois Supreme Court's decision in the Connell case, Connell v. Topenka. That case, of course, involved a class of property owners who brought a challenge to the State Division of Unclaimed Properties' practice of retaining the interest or dividends earned on property that had been temporarily abandoned to the state and was held in custody. The Division's practice was to turn over the property when the rightful owner appears, but to retain the interest that had been earned on that property in the interim. Mr. Connell and other property owners brought a takings challenge to that practice. And the state defended in that case, precisely as it does here, by saying this is a collateral attack, this is an impermissible collateral attack on the administrative decision to retain these interest and dividends. Your only recourse is under the ARL. Well, the Supreme Court disagreed with that proposition. The Supreme Court held that, whereas in that case, the amount of procedure, the nature of procedure that was actually, or excuse me, the type of government action was not contested. The state did not contest that its practice was to hold on to these interest and dividends. So there were no disputed questions of fact and therefore only issues of law were involved and exhaustion was not required. Counsel, I certainly appreciate your arguments on these issues and we may get back to it, but I'm kind of anxious to get to what I want to get to. So let me ask you, if you would, talk a little bit about the proposition that opposing counsel is basically saying you're cherry picking the statute, the language in the statute, and saying that you're entitled to attorney's fees. And they say that when we read the statute as a whole and consider the context of the language of the entire statute, that clearly you don't fall within what's required as far as being in a certain class to be entitled to attorney's fees. Can you talk about that a little bit, please? Thank you, Justice Holderwine. I'd be delighted to. We, of course, think that that argument, that interpretation of the fee provision in the Civil Rights Act fails for several reasons. Before I get to those, I do want to impress upon the Court our view that that argument by the state is not before this Court because it was raised for the first time in the state's brief on appeals. It was not hinted at, certainly not pressed below, and we think that just violates clear norms of appellate practice to raise really a new substantive argument and the state's principal argument on appeal. Now, do we have a transcript of the proceedings at the hearing for the request for the attorney's fees? Your Honor, we don't. We didn't prepare one because we didn't feel like anything was raised in it that was necessary. Of course, the state could have asked us once the document statement was filed to include that, and I think we would have been happy to do so, but we received no request. And I think if the state was going to argue that it had raised this during the hearing, which to my knowledge it did not, it would have been certainly incumbent upon the state to ask that we include those portions of the record that showed that. So we think that the issue is not before this Court. But, of course, notwithstanding that the Court has, even if we're right about that, discretion to reach the merits of the argument, and if the Court does that, we think the argument fails. And we really think that it fails in every way that an argument about the meaning of a statute can fail. We think that it violates the clear, unambiguous text of the Civil Rights Act. The Civil Rights Act plainly says in subsection C that fees shall issue in any action brought to enforce a state constitutional right. Well, the state's reading would impose upon that clear language a limitation to a small subset of such actions, those involving discrimination claims. Well, why wouldn't a reasonable interpretation be that it encompasses a constitutional right as the Act provides for, which would require the four different special classifications? Well, I don't think that the earlier sections of the Act speak to what constitutional rights are implicated. They certainly create a standalone or an independent cause of action for certain types of discrimination. The suspect classes. Right, confined to those. So that's the Act. That's right. But, Your Honor, And those are also the types of issues that can be raised constitutionally. They certainly can. And so the provision, then, when you skip down to fees, why wouldn't that be referring to the type of action as described in the preceding paragraphs? Well, we think, Your Honor, because of the structure of that provision, the structure of subsection C, which has two clauses, and the first clause says that fees are available in actions brought pursuant to subsection B, which are indeed, as the state says, limited to cases involving discrimination against one of the classes identified in subsection A. But then it goes on to say in clause 2, subsection C goes on to say that fees are available in any action brought to enforce a right arising under the Constitution of Illinois. And we think the clear structure of this, the clear intent of the Act as a whole, is to make fees available in both of those types of cases. And there's no limitation placed in subsection C, clause 2, on what types of constitutional rights may support a fee award. And indeed, we think to cabin that language with a limitation like the state proposes would essentially be to collapse those two subsections into one, to scratch subsection C, clause 2, out of the statute. Defendants in their brief, I'm looking at page 22, that say under your argument, if there's a successful challenge to, say, the pension clause of the state constitution, fees could be ordered. Is that right? I think that's quite possibly right, Your Honor. First of all, of course, you would need someone withstanding to raise such a claim. And you'd need to have a cause of action and a court with jurisdiction over it. And of course, the challenger would need to prevail, Your Honor, in one of the ways. And they also cite the example if there's a challenge to a statute because it violates a single subject rule. Yes. The prevailing party, according to your theory, would be entitled to attorney fees. Subject to the same provisos, Your Honor, that someone is found withstanding to raise such a challenge and prevails upon it, I think that absolutely does follow from our position. But to be candid, Your Honor. And so it would be your position that was the intent of the legislature. Absolutely. And to be candid, Your Honors, I really do not see how that is at all implausible. It seems to me that the states, essentially the policy argument that the state advances, the parade of horribles that they put before you in that section of their brief, are very far from horrible. I mean, essentially what the state is saying that it's unthinkable that the Assembly would have wanted to incentivize challenges to have invalidated unconstitutional actions of any type. I mean, these constitutional limitations themselves, there's a strong policy reason that they be enforced. And the very design of a fee-shifting provision is to incentivize. But how do you reconcile that? I mean, you know, in Illinois, we follow the American rule. And so anytime there's a fee-shifting provision, we have to, you know, scrutinize that. And that just doesn't seem to really jive with what you're advocating here. Well, I think you certainly need to scrutinize it. And to the extent that there's ambiguity in it, Your Honors, then certainly that ambiguity, the rule is, ought to be construed against an award of fees. But we would submit to you that there's simply no ambiguity here. The text is clear. The text says any action, Your Honors, any action to enforce a right arising under the Constitution, there's no textual limitation on which rights may be enforced. And what's more, it's another canon, of course, of construction, Justice Holder White, that this Court has no power to write into a statute limitations that the legislature elected not to. But we do have an obligation to consider the language of the statute in totality, not just look at one sentence and say, oh, this is what that means, and we completely disregard other language. To be sure, to be sure. But our submission, Your Honor, is that when the Act as a whole is viewed, that supports me because the clear structure of the Act was to provide for fees in both of these types of cases which the legislature understood were discrete types of cases, cases involving discrimination, which were provided for in Subsection C, Clause 1, and cases involving the vindication of a constitutional right. It seems to us that there's simply no way one can take a limitation that clearly does not apply to Subsection C, Clause 2, and read it into it just because it appears elsewhere in the Act limiting other provisions in the Act. That's not viewing the Act as a whole. That's importing limitation that clearly applies in one part of the Act to apply it into another part of the Act. And we submit that that's simply beyond the Court's power. I would also urge upon the Court that besides violating the text and structure of the Act, we think this does not accord at all with the history and the purpose of the Act because it's clear from the legislative debate that the design of this Act, at least insofar as it concerned fees, was to restore the status quo before the Buchanan case of the United States Supreme Court, which was the case that eliminated the catalyst theory for fee recovery as a matter of federal law. This Act was designed to restore the status quo before Buchanan, insofar as that could be done as a matter of state law. Is it appropriate for us to look at the hearings, the legislative conversation regarding this Act, if you say that there's no ambiguity? It certainly would not be, Your Honor. And we submit that our first submission to you would be that the language of the Act clearly favors us and really prevents any need to look at the history. But insofar as the Court disagrees with that and thinks that there is ambiguity in the text, we submit that it's helpful to see from the public history of the Act that it was designed to repudiate Buchanan and that the status quo of federal law before Buchanan is that fees were available under Section 1988 in any action brought to enforce any federal constitutional right, including in state court, of course, Your Honor, because Section 1983 is actionable in the courts of the state. Well, just for clarification, your principal argument is there is no ambiguity, which would mean that we should not be looking at comments by legislators, whether from the House or the Senate. That's correct, Your Honor. We think the statute is clear on its face and there's no need to look at the legislature. But insofar as the Court is inclined to do so, we think, again, we think the legislative history supports us in this. And the final point that I would make on this issue, Your Honor, is that the cases applying the Act also have implicitly rejected the state's theory, in particular the Gray v. Hasbro case from the 1st District, which upheld the fee award under the Civil Rights Act in a case where the underlying constitutional claims were ones of due process and privacy, not of equal protection or discrimination against one of these suspect classes. So this Court would be departing from the, we think, very persuasive authority of the First Circuit were it to adopt this wholly atextual limitation on the Act. Your Honor, if I may, I want to turn really briefly to the state's sovereign immunity argument, which is this other threshold objection. Really, the state, quite astonishingly in its briefing, does not defend the reasoning of the Court below and instead advances these two threshold arguments on appeal, one of which is its sovereign immunity argument. We submit, Your Honor, that sovereign immunity does not bar our fee award. First of all, we think the sovereign immunity simply does not apply here. It has no implication here. And that's because the state's sovereign immunity in Illinois exists only by the Sovereign Immunity Act, which provides very narrowly that the state may not be made a party in any action. We think the cases are very clear, Your Honors, that a fee petition and a fee award does not change the nature of the underlying action. It's merely a continuation or a part of the underlying action and therefore cannot make the state a party to an underlying action in a way that implicates sovereign immunity so long as the underlying action accorded the sovereign immunity. And here we submit that the underlying action did accord the sovereign immunity as to Count 1 because it was brought under the prospective injunctive relief exception to sovereign immunity and as to Count 2 because, of course, Count 2 was specifically authorized by the administrative review law. So we think sovereign immunity has no application to our fee petition. To the extent that the Court disagrees with that and thinks that it does apply, Your Honors, we would submit that the Civil Rights Act plainly and necessarily waives sovereign immunity for a fee award against the state. And again, on this issue, we would point the Court to the reasoning of the First District and the Gray case, which so held really on both of these propositions. It held that sovereign immunity was not implicated, and it held that to the extent that it was implicated, sovereign immunity had been waived by the Civil Rights Act, really because of the nature of the remedy that the Civil Rights Act grants. It grants a fee award in a universe of cases, every one of which will involve a state actor as a defendant. And when that's the case, to say that sovereign immunity imposes a bar on granting an award of fees to essentially the entire universe of cases in which the award would apply, it would empty the Civil Rights Act, we submit, of any meaning to say that sovereign immunity could apply in that way. If there are no further questions from the Court on that point, I will subside until rebuttal. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Counsel. My name is Paul Resett. I'm an Assistant Attorney General for the State of Illinois, and I represent the State Defendants here, the Illinois State Police, its Director, the Concealed Carry License Review Board, and its members. The Court today doesn't need to reach the thorny issues of sovereign immunity and sovereign immunity. administrative remedies because there's a threshold matter. Whether the Civil Rights Act of 2003 even applies here, that's the act that the fee provision is contained within that the plaintiffs are seeking to take advantage of. Counsel, was that raised before the trial court? It was not, Your Honor. I do have three responses to that. The first is that this Court can affirm on any ground. You affirm the result of the lower court, not the reasoning. The second is that appellees are not as restrained as appellants in raising new arguments on appeal, and an appellee can raise any ground that's supported by the record. And since this is a purely legal question, there's no prejudice to them because they didn't need to put on any evidence about it below. And then the third is that the forfeiture does not bind this Court. This Court can always overlook forfeiture in order to reach a just result. And here, if this act doesn't apply at all, it would certainly be unjust to award them $181,000 plus the additional fees they're going to want for this appeal. So for those three reasons, we ask this Court to reach this issue. How could the fees be awarded if the act doesn't even apply? So the reason that the act doesn't apply here is because the act applies only to claims of disparate impact brought by private individuals against governmental bodies under four suspect classes, race, color, national origin, and gender. It doesn't apply to any other type of claim. And the reason that the act was passed in 2004 was because the U.S. Supreme Court had, in Sandoval, issued a decision that said that Title VI claims, which previously had been able to be brought in federal court by plaintiffs raising these sorts of disparate impact claims against governmental bodies, Sandoval said that private individuals could no longer bring those. So the General Assembly decided that they would let people bring those claims in state court. So basically they were just reviving these Title VI claims. And that's what the legislative history discusses at length. So that was the sole purpose of this act. And both sponsors say repeatedly that it was not meant to subject the state to any additional liability, to create any new rights, to expand preexisting rights. And that's, of course, what would happen if you accepted counsel's argument here. Because prior to this act, you could not get fees if you prevailed under the administrative review law, even if you brought a constitutional claim. You also could not get fees if you brought a claim directly under the Illinois Constitution. So they're saying that this act has changed that going forward. But the sponsors have told us that this act does not change the law in any way. It just revives the claims that Sandoval extinguished. So our argument is... I think it is, Your Honor. When you look at the statute as a whole, if you myopically look at just these nine words that the claims rely on, it could give the impression that you could get fees for any type of Illinois state constitutional claim. However, if you look at the act as a whole, all the rest of it is about these sort of disparate impact discrimination claims. They don't talk about Illinois constitutional rights anywhere else except this brief mention in the fee provision. So therefore... But isn't it ambiguous because you have to read the whole statute? I think that makes it ambiguous. I say it's ambiguous in that we have different interpretations, and so then if the court agrees that we both have reasonable interpretations, that would make it ambiguous. They think it applies... But you did use the word myopic. Yes, I did. Regarding those words. For them. Right. They're just looking at these... They're cherry-picking, like Justice Holder-White pointed out. We argued they're cherry-picking that language, just like they cherry-pick language in the debates. If you look at their opening brief, they take little pieces of the debates. In fact, the first sentence of their argument is a quote from the debates. Then when we turned it around and showed how the debates actually hurt their case, now they're saying don't look at the debates. Of course. Because the sponsor said over and over that this is a very narrow statute, and it's only meant to revive these Title VI claims. There's no discussion at all about opening the door to fees for any sort of Illinois constitutional claim. And you would think that for something that major, what we call a sea change in our brief, there would have been some debate. There was debate about whether it would actually be applied prospectively or retroactively, which was a much smaller issue than whether the door's going to be open to fees in all sorts of constitutional claims now. And, you know, you spoke about the pension clause earlier. We had the Supreme Court not that long ago strike down amendments to the pension clause because they violated the Diminishment of Pension Clause. And under their reasoning, yes, those people could get fees. But they didn't seek fees in that case, and they weren't awarded them. And I think it's because their attorneys realized that the state provision does not apply generally, but only to these sort of Title VI claims. On the sovereign immunity issue, we think that the First District got that wrong in Gray. They did decide Gray without having oral argument, and we think it would have helped in that case. The Illinois Supreme Court in N. Ray Walker said that any time there's an alleged waiver of sovereign immunity, it has to be expressed.  And in Gray, First District said just the opposite, that you have to invoke sovereign immunity rather than explicitly waive sovereign immunity. So that's just the opposite of what the test in Walker was. And this court correctly applied the Walker test in Lynch just a couple years ago where it held that people could not sue the state and circuit court under the Human Rights Act because there was no mention of the state and there was no explicit waiver. So those are our two main points, that the Civil Rights Act was not intended to open the door to fee claims for things that are not disparate impact discrimination claims involving these four suspect classes, and that even if you think that that was the intent, that because Section 5C does not expressly waive the state's sovereign immunity, that that would bar the claim in any event. Unless the court has further questions, we ask that you affirm. Thank you, Your Honors. Just a few points. On forfeiture, Your Honors, it's certainly true that you have discretion to reach forfeited issues. It's certainly true that you have discretion as an appellate court to affirm on any basis in the record. There's no case that says that that relieves the appellee of his burden not to forfeit issues below. In fact, the case law is very clear that one cannot try out a case to conclusion on one theory of the case, then go into the appellate court, come up with a completely new theory of the case, and advance it there. That plainly violates principles of judicial fairness. It plainly violates forms of appellate practice. Additionally, I'd note that there is prejudice to the fact that they did not raise it below, notwithstanding the fact that it's a purely legal issue, and that is, the court below is deprived of the chance to pass upon this argument. And this court is deprived of what would have been the instructive reasoning of the court below on this argument. So even with questions of law, plainly, the ordinary forfeiture principles apply. And we submit that this argument is plainly forfeited under those principles. Moving to the merits of the state's new argument, and beginning with the text, it's simply not true that we are myopically focusing on six words in the text. Those six words in the text are plainly the only words in the text that directly bear on the availability of fees in Illinois constitutional, in cases brought to enforce Illinois constitutional rights. So it's clear that those words are the ones that are the most relevant in determining the legislator's intent. But again, we submit to you that we would encourage the court to look at the act as a whole. And when the court looks at the act as a whole, the court will see that the legislature had a very specific structure in that act. And it deliberately segregated it into two clauses of subsection C, different types of claims in which fees were available. And it simply would derange the deliberate structure of that act to write one of those clauses, to scratch one of those clauses out of the text. That's simply not consistent with this court's duty to interpret the statute as a whole. Moving to the purpose and the history of the law. Your Honor, it's clear from the legislative debates that one purpose of the act was to reverse the Sandoval decision. And that was the purpose of the legislature in enacting subsections A and B of the Civil Rights Act. It's also very clear from the debates that there was a second purpose, a second purpose of the act. And that was to repudiate the Supreme Court's decision in the Buchanan case. That it reversed the availability of fees in federal court under the catalyst theory. It simply will not do to look at the purposes that the legislature had in mind behind one provision of the act and then to draw from them some principle that limits the purposes that it had for a completely separate part of the act. It was designed for a completely separate purpose, to overrule a completely different Supreme Court case. Your Honors, we would submit further that the absence of heated debate about the availability of fees that this would create is not at all a surprise because this restoration of the pre-Buchanan case law was not at all a sea change in Illinois law. Again, under Buchanan, fees were available in any action under 1983 brought to enforce any federal constitutional right. Not just federal constitutional rights under the Equal Protection Clause, any federal constitutional right. And restoring the availability of fees for state constitutional rights cases is hardly a sea change from that. If the court were inclined to import any apex limit on the act drawn from the purpose of the debate, perhaps the court would limit it to litigation under state constitutional provisions that have analogs in the federal constitution since it's clear that the purpose of the act was designed to repudiate Buchanan. But we submit that the text on its face is clear. The text clearly applies, unambiguously applies to any action brought to enforce any right in the Illinois Constitution. Really briefly on sovereign immunity, it's certainly true that the ordinary rule is that the state is immune. It's certainly true that waivers must be clear and deliberate. It's not true that there is some sort of magic words requirement, that the legislature must employ some sort of magical pass code to eliminate sovereign immunity. And that's clear from this court's decision in the Martin v. Giordano case, where this court stated that the issue is not so much what words the legislature used or where it used them, but rather whether there's a clear and definite intent to remove the state's immunity from suit. We would submit to your honors respectfully that here there is a clear and definite and really a necessary intent to eliminate the state's immunity from suit to the extent that immunity applies at all in attorney's fee cases. So with those, your honor, we would ask for a reversal. And pending further questions from the court, we will end on our briefs. Thank you, counsel. We'll take the matter under advisement and await the readiness of the next case after lunch.